IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Jonathan Matthew Canty, III | Civil Action No. 4:08-3576-TLW |
| Plaintiff, | |
| v. | **ORDER** |
| Builders First Source-Southeast Group, LLC; Willie A. "Sonny" Joyner; Detective Joseph Hawes; and Horry County Police Department, | |
| Defendants. | |

This matter is currently before the Court on (1) the motion for summary judgment filed by Defendants Detective Joseph Hawes (hereinafter "Hawes" or "Detective Hawes") and Horry County Police Department (Doc. # 26); and (2) the motion for summary judgment filed by Defendants Builders First Source-Southeast Group, LLC (hereinafter "Builders First Source') and Willie A. "Sonny" Joyner (hereinafter "Joyner"). (Doc. # 27). Plaintiff filed the instant action on or about September 9, 2007, in the Court of Common Pleas for Horry County, State of South Carolina. The original complaint asserted state law claims against Defendants Builders First Source-Southeast Group, LLC, and Willie A. "Sonny" Joyner only. On or about September 16, 2008, the Plaintiff filed an amended summons and complaint naming Detective Hawes and the Horry County Police Department as Defendants, and asserted for the first time claims pursuant to 42 U.S.C. §1983 for alleged violations of the Plaintiff's federal constitutional rights. On October 22, 2008, Defendants removed the case based on federal question jurisdiction. See 28 U.S.C. § 1331. (Doc. # 1).

1

Subsequently, on October 1, 2009, Defendants Detective Joseph Hawes and Horry County Police Department filed a motion for summary judgment with a supporting memorandum. (Doc. # 26). On that same date, Defendants Builders First Source-Southeast Group, LLC and Willie A. "Sonny" Joyner also filed a motion for summary judgment, with a supporting memorandum. (Doc. # 27). Plaintiff filed a response to Defendants' motions on October 19, 2009. (Doc. # 32). Defendants Builders First Source-Southeast Group, LLC and Willie A. "Sonny" Joyner filed a reply to Plaintiff's memorandum in opposition on October 23, 2009. (Doc. # 35). The Court heard oral argument on this motion from all counsel on May 6, 2010. At the direction of the Court, the parties all filed supplemental memoranda on May 21, 2010.[1] For the reasons set forth in this Order, Defendant Detective Joseph Hawe's motion for summary judgment is granted in part as outlined herein.

## **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law." Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir. 1979). Once the movant has met its

---

[1]The primary subject of the supplemental briefing was whether probable cause could be established by hearsay. Afer review of the supplemental briefing by all parties, the court concludes that it can. See King v. Jones, 824 F.2d 324, 326-27 (4th Cir. 1987) ("The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. This determination does not involve any adversarial rights, and can be based entirely on hearsay and written testimony."); Jones v. United States, 362 U.S. 257, 271 (1960) ("We conclude therefore that hearsay may be the basis for a warrant"), overruled in part on other grounds by, United States v. Salvucci, 448 U.S. 83 (1980); see also, U.S. v. Salliey, 360 F.2d 699, 703 (4th Cir. 1966)(Hearsay may be basis for arrest warrant, where sources of complaining officers' information are set forth, where there is corroboration of hearsay matters, and where there is other sufficient basis upon which a finding of probable cause could be made).

burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (internal quotations omitted).

**Asserted Facts[2]**

Builders First Source had a commercial gasoline credit account through Fuelman used to fuel Builders First Source's fleet of delivery trucks. Each truck had a Fuelman gas card assigned to it. The cards were supposed to be accessed by each truck's assigned driver and used to purchase diesel fuel for Builders First Source trucks only. However, security over the cards was apparently lax. In the summer of 2006, Defendant Joyner, a Builders First Source supervisory employee, noticed that the gas card account statements showed an unexpected and substantial increase in fuel purchases.

---

[2]The Court will view all asserted facts and the inferences therefrom in the light most favorable to the Plaintiff as the party opposing the motions for summary judgment. The Court does not include in this Order asserted facts which it does not deem relevant to the § 1983 claims.

The statements showed purchases of gasoline even though Builders First Source trucks operate on diesel fuel only, purchases at night and during weekends, and other irregularities which indicated potential theft. Joyner notified the Horry County Police Department.

Around October 19, 2006, the Horry County Police Department received a call from Builders First Source regarding possible misuse of Builders First Source gasoline credit cards. Detective Hawes became the lead investigator. Detective Hawes and another Horry County Police Department detective went to Builders First Source located in Conway to begin an investigation. Ultimately, the investigation showed that one or more Builders First Source employees completed in excess of $93,000.00 worth of unauthorized transactions on Builders First Source gas cards. The account statements revealed that most, but not all, of the unauthorized purchases were made on the fuel card assigned to Builders First Source boom truck #1297.

Vincent Shuler, a former Builders First Source employee, developed as a suspect. Shuler had been assigned as a crew member on Builders First Source boom truck #1297. Based on the practices at that time, Schuler would have had access to the Builders First Source gas card for truck # 1297 and the corresponding PIN number. Detective Hawes indicates that witnesses provided information and statements that Shuler had made gasoline purchases for others using a credit card. Also during the course of the Horry County Police Department investigation, an individual by the name of Patrick Wilds contacted a Builders First Source manager, Jim Bowen, and voluntarily provided information to Builders First Source regarding the use of the Builders First Source credit cards. Detective Hawes subsequently personally interviewed Mr. Wilds on multiple occasions. Wilds, then a co-worker of Shuler at another business, stated that Shuler stated he had a gas card he could use to get free gas. He admitted that Shuler had, in fact, used the gas card to purchase gasoline for him on at least one

4

occasion. Detective Hawes indicates that many of the details provided by Wilds surrounding Shuler's use of the Builders First Source gas cards were corroborated by other witnesses and other sources of information. Detective Hawes obtained from a magistrate three arrest warrants against Mr. Shuler for financial transaction card theft, financial transaction card fraud, and grand larceny. Shuler refused to cooperate, and denied any involvement in the crimes. Schuler was ultimately accepted into pre-trial intervention.

During Detective Hawes's interviews of Builders First Source employees, Plaintiff's name was mentioned in connection with Shuler. Plaintiff and Shuler had been assigned to the same crew, and were close friends away from work, even having lived together at one point in time. Additionally, Wilds stated that Shuler had told him that "J.C.," an apparent reference to Jonathan Canty, had been the one to show Shuler how to use the Builders First Source gas cards. Mr. Wilds also stated that "J.C." was known in the community as the "Gas Man," because he would use the Builders First Source gas card to fill up people's vehicles and motorcycles with gas in exchange for payment, and that the "Gas Man" was especially popular during bike week. Based on the totality of the information known to him– including the information provided by Wilds, Shuler's and Plaintiff's professional and social relationship, and Plaintiff's opportunity to access the gas cards, Detective Hawes indicates that he concluded that he had sufficient facts and information to support probable cause to arrest.

Detective Hawes took the information he had learned about the Plaintiff to his supervisors to discuss how best to proceed. In light of all of the information developed, it was decided that Detective Hawes should present the information to a magistrate for a judicial determination of probable cause and arrest warrants. Therefore, Detective Hawes submitted three sworn affidavits

5

to a Horry County Magistrate seeking arrest warrants against the Plaintiff for financial transaction card theft, financial transaction card fraud, and grand larceny. The affidavits recounted the information known to Detective Hawes at the time. Although Wilds's identity was known to others and he had provided substantive information on the record to Detective Hawes, Wilds is the "confidential informant" mentioned in the affidavits. In addition to presenting the affidavits to the magistrate, Detective Hawes appeared before the magistrate and provided additional sworn statements regarding other details of the investigation, including that Wilds's prior information leading to the arrest of Shuler had proven reliable. The three arrest warrants were issued on October 31, 2006.

On November 1, 2006, an Horry County Police Department warrant officer arrested the Plaintiff at Builders First Source and transported him to the J. Reuben Long Detention Center for booking. Detective Hawes and another Horry County Police Department officer went to the detention center to interview the Plaintiff on the morning of November 3, 2006. The Plaintiff was served with the arrest warrants at that time, and was advised of his Miranda rights. The Plaintiff waived his rights and agreed to talk with the officers. Plaintiff denied any involvement in or knowledge of the unauthorized use of the Builders First Source gas cards. Plaintiff declined to provide a written statement denying any involvement in the crimes. The interview concluded when the Plaintiff indicated that he wanted it to end.

The next day the Plaintiff was taken before a magistrate for his bond hearing, and was thereafter released from jail. Detective Hawes did not appear at the Plaintiff's bond hearing. Detective Hawes did not oppose the Plaintiff's bond, nor did he request that any conditions be placed on the Plaintiff's release. One of the conditions placed by the court on the Plaintiff's bond was that

6

the Plaintiff have no contact with Builders First Source. According to the Plaintiff, this led to his termination from Builders First Source for job abandonment.

Following Mr. Canty's arrest, the Horry County Police Department investigation continued. While the continuing investigation allegedly revealed additional, minor corroborating evidence to support the charges against the Plaintiff, Detective Hawes became unconvinced that the evidence which had developed was sufficient to convict the Plaintiff in a court of law. On November 28, 2006, Detective Hawes e-mailed Ms. Donna Elder, the assistant solicitor to whom the Plaintiff's case had been assigned, and advised her that the subsequent investigation was leading him to conclude that the Plaintiff had not committed the crimes. The charges against the Plaintiff were ultimately dismissed at Detective Hawes's suggestion and request.

## **Law/Analysis**

From the Amended Complaint, it appears that the Plaintiff asserts claims against Detective Hawes under 42 U.S.C. § 1983 for improper seizure in violation of his Fourth Amendment rights[3] and under South Carolina law for defamation and malicious prosecution.[4] The Plaintiff asserts only

---

[3]The Plaintiff asserts two Fourth Amendment claims, one for seizure without reasonable suspicion and one for seizure without probable cause. (See Amended Complaint ¶¶ 28-31.) Since this case involves an alleged false arrest pursuant to an arrest warrant, rather than an improper Terry stop or other similar brief detention, the standard is probable cause. Compare U.S. Const. amend IV ("The right of the people to be secure in their persons...against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause"), with Terry v. Ohio, 392 U.S. 1, 22 (1968) (police may make brief investigatory stop on reasonable suspicion based on "specific and articulable facts"). The Plaintiff's third cause of action, therefore, fails to state a claim, or is, at the least, redundant of the fourth cause of action and should be dismissed.

[4]To the extent that the Plaintiff's malicious prosecution claim (*see* Amended Complaint ¶¶ 24-27) is asserted under both federal and state law, the federal "malicious prosecution" claim should be dismissed as a matter of law. There is no federal constitutional claim for malicious prosecution; rather, "[w]hat is conventionally referred to as a '§ 1983

7

state law claims against the Horry County Police Department, Builders First Source and against Joyner. The Court will initially address the Federal Fourth Amendment claims.

An arrest based on probable cause does not violate the Fourth Amendment. Under the Fourth Amendment, an arrest is reasonable only if based upon probable cause. Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001). "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed an offense.' " Id. To determine whether or not probable cause existed, we must examine the "totality of the circumstances" known to the officers at the time of arrest. United States v. Al-Talib, 55 F.3d 923, 931 (4th Cir. 1995). The determination and existence of probable cause is a practical, nontechnical conception, and it involves "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175-76 (1949). Probable cause will be found when "the facts and circumstances within an officer's knowledge-or of which he possesses reasonably trustworthy information-are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000); United States v. Williams, 10 F.3d 1070, 1073 (4th Cir. 1993), cert.denied, 513 U.S. 926 (1994). "Whether probable cause exists in a particular situation ... always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." Rogers, 249 F.3d at 290. "Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal

---

malicious prosecution' action is nothing more than a § 1983 claim arising from a Fourth Amendment violation." Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000), cert. denied, 531 U.S. 1130 (2001).

misunderstanding, or both." Id. Probable cause demands more than a mere suspicion, but less than evidence sufficient to convict. Taylor v. Waters, 81 F.3d 429, 433 (4th Cir.1996).

Viewing the evidence in the light most favorable to the Plaintiff, the undersigned concludes that there has been no violation of Plaintiff's Fourth Amendment Rights. In this case, Defendant Detective Hawes asserts that the totality of information possessed by him at the time he sought and received the arrest warrants was more than sufficient "to convince a person of reasonable caution" that the Plaintiff had committed criminal offenses involving the Builders First Source gas cards. This Court agrees. Detective Hawes' investigation revealed that one or more Builders First Source employees had transacted more than $93,000.00 worth of unauthorized transactions on Builders First Source gas cards. Detective Hawes developed substantial and credible evidence that Shuler had committed at least a number of the unauthorized transactions, which evidence included information and statements provided by Wilds, then a co-worker of Shuler, that Shuler had purchased gas for him and others using Builders First Source credit cards in exchange for payment or other consideration. The information developed from Wilds against Shuler proved reliable and was corroborated by other witness statements and evidence, and was instrumental in the arrest of Shuler.

Not only was the reliability of Wilds's information against Shuler established by external corroboration, but it was also attended by inherent indicia of reliability. First, Wilds came forward voluntarily, as a good samaritan. He was not a current employee of Builders First Source and had no obvious or known reason for financial or other gain by providing information to Detective Hawes. Wilds did not come forward as a suspect or criminal looking for favor by cooperation, nor did he have any known financial motive to provide information. Second, Wilds admitted, potentially against his own interest, that he had benefitted, although unknowingly, from Shuler's unauthorized

use of a Builders First Source card.

Given the number of transactions at issue and the sheer amount of unauthorized charges, it was reasonable to surmise that Shuler was not the only person engaged in the scheme. During the course of the investigation, the Plaintiff's name came up in connection with Shuler's. The Plaintiff and Shuler had been assigned to the same crew at Builders First Source, and they were, reportedly, close friends away from work, even having lived together for a period of time. Given the Plaintiff's position at Builders First Source and his association with Shuler, he would have had the same opportunity to access the gas cards and PIN numbers as Shuler. Additionally, Wilds, who had proven a reliable source of information, stated that Shuler told him that the Plaintiff also used Builders First Source gas cards to provide other people with gas in exchange for money, and that the Plaintiff was even the one who showed Shuler how to use the gas cards. Wilds also told Detective Hawes that the Plaintiff was known in the community as the "Gas Man," and was popular during bike week because he sold gas to people using the Builders First Source gas card.

In light of the evidence known, including Wilds's apparent credibility and reliability, Detective Hawes reasonably sought arrest warrants from a neutral and detached magistrate. He set forth all relevant information in the affidavits in support of his warrant, and that information provided a sufficient basis for the magistrate to determine probable cause. Moreover, Detective Hawes provided the magistrate with additional information by way of sworn statements, particularly as to the prior reliable information provided by Wilds in connection with Shuler's arrest. Given the totality of the circumstances, the magistrate concluded that probable cause for arrest existed, and therefore appropriately issued the arrest warrants. The Defendant relies on these facts in asserting that there was, therefore, no Fourth Amendment violation.

After careful review and consideration, this Court agrees that there was no Fourth Amendment violation in this case. The Court concludes that in light of the totality of the circumstances, Detective Hawes possessed sufficient evidence to believe, reasonably, that the Plaintiff had committed crimes. He, therefore, appropriately sought and received arrest warrants from a neutral and detached magistrate. As the Court concludes that there was probable cause for the arrest in this case, there was no Fourth Amendment violation.

Additionally, the Court also concludes that Detective Hawes is entitled to Qualified Immunity from suit in this case. Qualified immunity shields government employees performing discretionary functions from civil liability so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Anderson v. Creighton, 483 U.S. 635, 639 (1987). This immunity protects "all but the plainly incompetent and those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986), and provides "ample room for mistaken judgments," and accommodates for "reasonable error." Hunter v. Bryant, 502 U.S. 224, 229 (1991). Officers, therefore, may not be held liable for "bad guesses in gray areas," but only "for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

The first step in the qualified analysis is to ascertain "whether a constitutional right would have been violated on the facts alleged." Saucier v. Katz, 533 U.S. 194, 200 (2001); McKinney v. Richland County Sheriff's Department, 431 F.3d 415, 417 (4th Cir. 2005). "If the answer to this inquiry is 'no,' the analysis ends and the plaintiff cannot prevail." Gomez v. Atkins, 296 F.3d 253, 261 (4th Cir. 2002). If, however, the answer to the first inquiry is "yes," then the court must next

"consider whether, at the time of the violation, the constitutional right was clearly established, that is, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 201-02); see also Taylor, 81 F.3d at 433 (court must "inquire whether a reasonable person in the official's position would have known that his conduct would violate that right"). "In determining whether the right violated was 'clearly established,' we define the right in light of the specific context of the case, not as a broad general proposition." McKinney, 431 F.3d at 417. "The right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 637 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. at 640. So long as an officer's actions can be viewed within the range of reasonableness, qualified immunity applies. Pinder v. Johnson, 54 F.3d 1169, 1173 (4th Cir. 1995).

In this action, the Court concludes that the qualified immunity analysis need not proceed beyond the first inquiry. As noted above, even viewing the evidence in a light most favorable to the Plaintiff, the Court has concluded that the arrest warrants at issue were based on probable cause as a matter of law; therefore, the Plaintiff suffered no violation of his Fourth Amendment rights. See McKinney, 431 F.3d at 418 (where arrest warrant was based on probable cause, there is no constitutional violation and no need to go beyond first stage of qualified immunity analysis).

Even if this Court were to assume arguendo, that the Plaintiff has shown the violation of a clearly established right, such that it would be necessary to address the second stage of the analysis,

12

Detective Hawes would still be entitled to qualified immunity. Under the second stage, the question is whether, at the time of the violation, the constitutional right was clearly established, that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Gomez, 296 F.3d at 261-62 (citing Torchinsky, 942 F.2d at 260); see also Taylor, 81 F.3d at 435 (it must be considered whether the established contours of probable cause were sufficiently clear at the time of the arrest to make it plain to a reasonable officer that under these particular circumstances arresting Defendant would violate his constitutional rights). When an officer acts pursuant to a warrant, the pertinent question is whether the officer could have reasonably thought there was probable cause to seek the warrant. Smith v. Reddy, 101 F.3d 351, 356 (4th Cir. 1996). Qualified immunity is lost only if "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Id. (citing Malley, 475 U.S. at 344-45). In other words, an officer is not denied qualified immunity for making a mistake, as long as that mistake is reasonable under the circumstances. Id. As the Fourth Circuit has held:

> When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983. Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates. This in turn would promote delay in the execution of warrants, and alter the proper allocation of law enforcement functions.

Torchinsky, 942 F.2d at 262.

Here, as addressed in detail, in light of totality of the circumstances – including both the circumstantial evidence (e.g., the Plaintiff's apparent close relationship with Shuler and his employment with Builders First Source on the same crew as Shuler) and the additional information provided by Wilds (e.g., Shuler's statements that the Plaintiff was involved and the Plaintiff's nick-

13

name as the "Gas Man") Detective Hawes possessed sufficient information to have reasonably concluded that probable cause existed to justify seeking the arrest warrants. In his warrant affidavits and sworn testimony to the magistrate, Detective Hawes set forth all pertinent evidence and information in his possession and provided no intentionally inaccurate information, and the warrant was not otherwise "so lacking in indicia of probable cause;" therefore, Detective Hawes should be afforded qualified immunity from suit under § 1983. Moreover, Detective Hawes's conduct leading up to seeking the arrest warrants lends further support to the objective reasonableness of his actions. After arresting Shuler and investigating the Plaintiff's alleged activities, Detective Hawes sought out the counsel of his supervising officers prior to seeking the arrest warrants. Only after conferring with his supervisors was it decided that he should seek arrest warrants from a magistrate. Such conduct indicates that Detective Hawes conducted himself in a "prudent and deliberate manner." Gomez, 296 F.3d at 264 (finding significant the officer's decision to consult supervisors and legal counsel prior to obtaining warrants). Likewise, Detective Hawes's decision to seek an arrest warrant from a neutral and detached magistrate itself supports that he acted in an objectively reasonable manner. See id. (citing Torchinsky, 942 F.2d at 262). Even if Detective Hawes made a mistake in concluding that probable cause existed to seek the arrest warrants and arrest the Plaintiff, such a mistake was not an unreasonable one under the circumstances. See Smith, 101 F.3d at 356 ("officer is not denied qualified immunity for making a mistake, as long as that mistake is reasonable under the circumstances"). His actions and conclusions were objectively reasonable, were not borne of plain incompetence, and transgressed no "bright lines;" therefore, he should not be denied qualified immunity from suit under 42 U.S.C. § 1983 and the Plaintiff's claims thereunder should be dismissed as a matter of law.

The facts asserted by Plaintiff, viewed in the light most favorable to him, are simply not sufficient to establish a violation of Plaintiff's Fourth Amendment constitutional rights. Accordingly, Defendant Hawes is entitled to summary judgment on Plaintiff's § 1983 claim(s) for the reasons outlined above. All of Plaintiff's remaining claims against the collective Defendants are pendent state law claims. However, having granted summary judgment to Defendant Hawes on Plaintiff's only federal claim, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, these claims are hereby remanded to the Court of Common Pleas for Horry County, State of South Carolina.

## **Conclusion**

For the foregoing reasons, the undersigned **GRANTS** Defendant Hawe's motion for summary judgment as to Plaintiff's § 1983 claim(s). Because the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, the same are hereby **REMANDED** to the Court of Common Pleas for Horry County, State of South Carolina.

**IT IS SO ORDERED.**

s/ Terry L. Wooten<br>
Terry L. Wooten<br>
United States District Court Judge

July 9, 2010
Florence, South Carolina